Richard Lombardo
Shaffer Lombardo Shurin, P.C.
2001 Wyandotte
Kansas City, MO 64108
Telephone: 816-931-0500
rlombardo@sls-law.com
(pro hac vice forthcoming)

Andrew Bluth (SBN 232387)
Singleton Schreiber, LLP
1414 K St Ste 470
Sacramento, CA 95814-3966
Telephone: 916-775-5894
abluth@singletonschreiber.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD BROWN, B.E.B., J.B.B., AND JULIE JOHNSON, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS, <br><br>      Plaintiffs, <br><br>      v. <br><br> POWERSCHOOL HOLDINGS, INC. <br><br>      Defendant. | Case No: <br><br> **COMPLAINT FOR:** <br><br> (1)  Negligence; <br> (2)  Negligence Per Se. <br><br><br> **DEMAND FOR JURY TRIAL** <br><br> **<u>CLASS ACTION</u>** |

Plaintiffs Richard Brown, B.E.B., J.B.B., and Julie Johnson (collectively, "Plaintiffs"), individually and on behalf of a class of similarly situated individuals (defined below), bring this action against PowerSchool Holdings, Inc. ("PowerSchool" or "Defendant") and alleges as follows:

## I.    SUMMARY OF THE CASE

1.    Defendant PowerSchool is a leading provider of cloud-based software for K-12 education in the U.S. PowerSchool collects and maintains highly sensitive personal identifiable information ("PII") for more than 60 million students, parents, and school faculty worldwide.  PowerSchool acquires the PII through its educational technology products that it sells to schools and school districts.

2.    On December 28, 2024, PowerSchool lost control of this PII when it was stolen by hackers, who accessed the PII through corrupted login credentials and negligent website design. PowerSchool has acknowledged that the information accessed in the Data Breach included at least the following, most of which pertains to students under the age of 18:

 a. names;

 b. addresses;

 c. Social Security numbers;

 d. phone numbers;

 e. email addresses;

 f. medical information;

 g. grades and grade point averages;

 h. bus stops for students;

 i. passwords for student portals;

 j. notes and alerts concerning students;

 k. student IDs; and

 l. PII of parents or guardians of students.

3.    PowerSchool failed to maintain reasonable security safeguards and protocols to protect its users' PII. For example, it appears that none of the information accessed in the Data Breach was encrypted. PowerSchool also lacked proper controls to determine which students, parents, and faculty were impacted by the Data Breach, as it was unable to alert impacted individuals for nearly ten days.

4.    As a result of the misconduct alleged herein, Defendant was negligent.

## II.    PARTIES

5.    Plaintiff Richard Brown is the father and legal guardian of Plaintiffs B.E.B. and J.B.B. At all relevant times, he has been a resident of Missouri. His son and daughter attend a school in the North Kansas City 74 School District that uses PowerSchool products. As a result, he has provided his and his son's and daughter's PII to PowerSchool.

6.    Plaintiff B.E.B. is a minor under the age of 18. At all relevant times, he has been a resident of Missouri. He attends school in the North Kansas City 74 School District. His school uses PowerSchool products and services. As a result, his PII was collected by PowerSchool. His personal information was accessed in the Data Breach.

7.    Plaintiff J.B.B. is a minor under the age of 18. At all relevant times, she has been a resident of Missouri. She attends school in the North Kansas City 74 School District. Her school uses PowerSchool products and services. As a result, her PII was collected by PowerSchool. Her personal information was accessed in the Data Breach.

8.    Plaintiff Julie Johnson is a teacher for Springfield Public Schools. At all relevant times, she has been a resident of Missouri. The school where Ms. Johnson teaches uses PowerSchool products and services, where she uses it as part of her job as teacher. As a result, PII was collected by PowerSchool. Her

personal information was accessed in the Data Breach.

9.    Defendant PowerSchool is a Delaware corporation headquartered at 150 Parkshore Drive, Folsom, California 95630.

## III.    JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. PowerSchool and at least one Class Member are citizens of different states. There are over 100 putative Class Members.

11.    This Court has personal jurisdiction over PowerSchool because it is headquartered in this district and conducts substantial business in this district. It has also conducted systematic and continuous activities in California; and there is a substantial nexus between the conduct PowerSchool directs at California and the claims asserted herein.

12.    Venue is proper in this Court because Defendant is headquartered in this district and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this district.

## IV.    CLASS ACTION ALLEGATIONS

13.    Plaintiffs bring this class action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following class:

> All individuals whose PII was exfiltrated or stolen in the Data Breach

14.    Specifically excluded from the Class are Defendant; its officers, directors or employees; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant. Also excluded from the Class are attorneys participating in this matter and the members of his or her immediate family, any federal, state or local governmental entities, any

judicial officer presiding over this action and the members of his or her immediate family and judicial staff, and any juror assigned to this action.

15.    The Class Period is the full extent of the applicable limitations period, including any tolling or other equitable considerations that extend the limitations period.

16.    <u>Class Identity</u>: The Class is readily identifiable and is a class for which records should exist.

17.    <u>Numerosity</u>: Class Members are so numerous and geographically dispersed that joinder is impracticable. Millions of Nationwide Class Members had their data accessed by an unauthorized third party in the Data Breach.

18.    <u>Typicality</u>: Plaintiffs' claims are typical of the claims of Class Members because Plaintiffs and Class Members had their information accessed by an unauthorized third party in the Data Breach due to the same conduct by Defendant.

19.    Defendant has acted in a manner that applies generally to Plaintiffs and all Class Members. Each Class Member has been similarly impacted by Defendant's failure to implement reasonable security measures to protect Class Members' PII.

20.    <u>Commonality</u>: There are questions of law and fact common to the Class, including:

    (a)    Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class Members' PII;

    (b)    Whether Defendant breached its duty to use reasonable care with respect to the Data Breach and/or its response to the Data Breach;

    (c)    Whether Defendant had reasonable systems in place to protect against and/or detect the Data Breach;

    (d)    Whether Defendant had reasonable systems in place to respond to the Data Breach;

(e)  Whether Defendant's notice to Plaintiffs and Class Members was reasonable; and

(f)  Whether Plaintiffs and Class Members were harmed by the Data Breach.

21.  <u>Predominance:</u> The above-listed questions of law and fact common to all Class Members predominate over questions that may affect individual Class Members.

22.  <u>Adequacy:</u> Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the Class. Plaintiffs have also retained counsel competent and experienced in the prosecution of class actions and complex data privacy cases to represent them and the Class.

23.  <u>Superiority and Manageability:</u> A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class Members is impracticable. The individual prosecution of separate actions by individuals would lead to repetitive adjudication of common questions of fact and law and create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant. There will be no difficulty in the management of this action as a Class action.

## V.  FACTUAL BACKGROUND

24.  PowerSchool is the largest provider of cloud-based education software for K-12 education in the U.S., serving more than 75% of students in North America. PowerSchool's software is used by over 16,000 customers to support more than 50 million students in the United States. PowerSchool offers a full range of services to help school districts operate, including platforms for enrollment, communication, attendance, staff management, learning systems, analytics, and finance.

25.    Due to the nature of its business, PowerSchool receives and maintains PII for millions of students, parents, and school faculty across the country. Under state and federal law, PowerSchool had a duty to protect the PII of current and former students and school faculty members, including under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. It likewise had a duty to alert the students, parents, and school faculty that their PII was accessed by an unauthorized third party and which PII was at issue.

26.    In the Global Privacy Statement on its website, PowerSchool tells users it is "committed to protecting [users'] personal information" and that it "endeavors to align its privacy and security operations to best practices and relevant international regulations." As demonstrated below, PowerSchool does no such thing.

### A. The Data Breach

27.    On or about December 28, 2024, hackers successfully breached Defendant's PowerSource customer support portal using a compromised credential, allowing further access to Defendant's school student information system, PowerSchool SIS, which includes student records, grades, attendance, and enrollment. Hackers were able to access and steal this information by exporting the PowerSchool SIS 'Students' and 'Teachers' database tables to a CSV file, which was then stolen.

28.    PowerSchool did not alert customers (mainly schools and school districts) until January 7, 2025 – ten days after detecting the Data Breach. Even then, PowerSchool still has not alerted all customers regarding the Data Breach, including parents, students, and faculty who have been impacted by the Data Breach.

29.    The hackers were able to access at least the following PII from PowerSchool, which is particularly sensitive for minors in the Class:

a.    names;

b.    addresses;

c.    Social Security numbers;

d.    phone numbers;

e.    email addresses;

f.    medical information;

g.    grades and grade point averages;

h.    bus stops for students;

i.    passwords for student portals;

j.    notes and alerts concerning students;

k.    student IDs; and

l.    PII of parents or guardians of students.

30.    The hackers have or will exploit the data obtained in the Data Breach for profit. The hackers would not have incurred the time and effort to breach PowerSchool's systems to access users' PII and risk significant criminal prosecution if the information was not valuable. It is likely that Plaintiffs' and Class Members' PII has already been or will imminently be published and sold on the Dark Web.

**B. Failure to Adopt Reasonable Systems and Protections**

31.    PowerSchool did not adopt reasonable data systems and protections to safeguard students and faculty PII, prevent and detect unauthorized access to this data, or identify users impacted by the Data Breach.

32.    Central to its core businesses, PowerSchool collects highly personal data for tens of millions of students, parents, and school faculty. It generates hundreds of millions of dollars annually through the collection, storage, and use of this information. It therefore had ample resources and a strong motive to adopt reasonable protections. It also should have known that such protections were necessary given the highly personal nature and value of the information it stores.

33.    PowerSchool knew or should have known that it would be the target

of hackers. Similar education technology providers had been subject to data breaches in previous years. More recently, PowerSchool informed the FBI that it was subject to a campaign to obtain PowerSchool's data.

34.   On information and belief, PowerSchool failed to:

a.   adequately train its employees on cybersecurity protocols;

b.   implement reasonable security measures to prevent data breaches;

c.   implement reasonable security measures to detect data breaches;

d.   implement reasonable security measures to comprehend the scope of data    breaches; and

e.   implement reasonable security measures to timely determine who was impacted by data breaches.

35.   Following the Data Breach, PowerSchool is attempting to adopt and implement reasonable data systems and procedures. As it explained following the Data Breach, PowerSchool is now "Securing the Portal" that was used to access the data and "Strengthening Security" for its systems. But these measures are too late for Plaintiffs and Class Members. PowerSchool should have implemented these reasonable measures before the Data Breach.

36.   PowerSchool has done little to help those impacted by the Data Breach. It appears to have offered credit monitoring services to only some of the victims. These services do not compensate Plaintiffs or Class Members for the injuries sustained to date and, at most, provide limited protections moving forward.

### C. Plaintiffs' and Class Members' Injuries

37.   Plaintiffs and Class Members believed PowerSchool would use reasonable security protocols and procedures to protect their PII. At minimum, they reasonably believed it would implement systems consistent with its stated privacy policies and state and federal law. PowerSchool obtained and maintains Plaintiffs' and Class Members' PII. PowerSchool, therefore, has a continuing

legal duty and obligation to protect the data from unauthorized access and disclosure.

38.     Plaintiffs and Class Members believed that a portion of the funds paid by their schools for PowerSchool products and services would be used to provide adequate cybersecurity for their PII. Plaintiffs' information was stolen by the hackers and has already been published—or will likely be published imminently—on the Dark Web or sold to other cybercriminals.

39.     Plaintiffs and Class Members have spent and will continue to spend time and effort monitoring their data and addressing issues caused by the Data Breach. As one news organization explained, to protect themselves, Plaintiffs and Class Members must do things like: monitor personal accounts, use credit monitoring and identify protection services, stay updated and continue to monitor information about the Data Breach, and reach out to the schools for clarification concerning the Data Breach.

40.     In addition, Plaintiffs and Class Members now fear for the security of their PII and worry about information that was exposed in the Data Breach.

41.     Due to the Data Breach, Plaintiffs and Class Members have suffered and/or will suffer from physical injuries like anxiety, sleep disruption, stress, fear, and frustration due to the Data Breach. Such injuries go far beyond allegations of mere worry or inconvenience and are the type of personal injuries that the law contemplates and addresses.

42.     Plaintiffs and Class Members have a continuing interest in ensuring that their PII—which appears to remain in Defendant's possession—will be secure from any future hacking attempts.

43.     Plaintiffs and Class Members have suffered a significant loss in the value of their PII. Specifically, due to the Data Breach, Plaintiffs and Class Members have suffered:

    a.     loss of the opportunity to control how their PII is used;

b.   diminution in value of their PII;

c.   compromise and continuing publication of their PII;

d.   out-of-pocket costs from trying to prevent, detect, and recover from identity theft and fraud;

e.   lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, inter alia, preventing, detecting, contesting, and recovering from identify theft and fraud;

f.   unauthorized use of their stolen PII; and/or

g.   continued risk of exposure of their PII.

44.   There is a significant market for Plaintiffs' and Class Members' stolen PII.

45.   Compensating Plaintiffs and Class Members for their out-of-pocket expenses associated with the Data Breach is not sufficient to make them whole. According to the Department of Justice's Bureau of Justice Statistics ("BJS"), nearly one-third of "victims who had personal information used for fraudulent purposes . . . spent a month or more resolving problems." In fact, for some victims, the BJS found that it took more than a year for them to resolve the issues.

46.   Finally, given that the fraudulent activity stemming from the Data Breach may not come to light for several years, Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, and the loss of time and money that comes with this.

### D. PowerSchool Did not Follow FTC Guidelines or Industry Standards

47.   According to guidance from the FTC, businesses that collect consumer data should factor in the need for adequate data security into all business decision-making. The FTC has also provided guidance that identifies practices that allow companies like PowerSchool to protect themselves against a data breach, i.e., established industry standards for adequate protection against

data incidents.

48.    As part of its 2016 guidelines, the FTC explained that, in order to adequately protect user data, a company should, among other things:

a.    encrypt information stored on computer networks;

b.    understand their network's vulnerabilities;

c.    implement policies to correct security problems;

d.    have response plans in place to ensure an adequate and timely response to a data breach;

e.    require complex passwords to navigate the systems;

f.    use industry-tested security methods;

g.    have monitoring systems in place to detect suspicious activity; and

h.    verify that third-party service providers have reasonable security systems in place.

49.    Companies that fail to employ reasonable security systems and procedures may face an enforcement action from the FTC, as it often interprets such failures as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

50.    Several practices have been established that provide baseline industry standards for businesses. These best practices include:

a.    educating all employees;

b.    strong passwords;

c.    multi-layer security, including firewalls, anti-virus, and anti- malware software;

d.    encryption (making data unreadable without a key);

e.    multi-factor authentication;

f.    backup data; and

g.    limiting which employees can access sensitive data.

51.    Other industry standard best practices include:

h.    installing appropriate malware detection software;

i.    monitoring and limiting network ports;

j.    protecting web browsers and email management systems;

k.    setting up network systems such as firewalls, switches, and routers;

l.    monitoring and protection of physical security systems;

m.    protection against any possible communication system; and

n.    training staff regarding critical points.

52.    PowerSchool failed to implement several of these industry standards and best practices, which directly and proximately caused the Data Breach and the injuries resulting therefrom to Plaintiffs and Class Members.

### E. Tolling

53.    Any applicable statute of limitations has been tolled by PowerSchool's knowledge and concealment of the unlawful conduct and misrepresentations alleged herein. Plaintiffs and Class Members could not have discovered PowerSchool's unlawful conduct through reasonable diligence.

54.    PowerSchool knowingly, actively, affirmatively and/or negligently concealed the facts alleged herein. Plaintiffs and Class Members reasonably relied on PowerSchool's concealment.

## VI.    CLAIMS ALLEGED ON BEHALF OF PLAINTIFFS AND THE CLASS

### COUNT I

#### <u>Negligence</u>
#### (On Behalf of Plaintiffs and the Class)

55.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

56.    Plaintiffs and the Nationwide Class entrusted their PII to PowerSchool based on the understanding that PowerSchool would take reasonable steps to safeguard this data.

57.    PowerSchool owed a duty of care to Plaintiffs and Nationwide Class Members concerning their PII because it was foreseeable that any failure by PowerSchool to adopt adequate security systems consistent with industry standards would increase the risk that Plaintiffs' and Nationwide Class Members' PII would be accessed by cybercriminals in a data breach.

58.    As the nation's leading provider of cloud-based software for K-12 education, PowerSchool has full knowledge of the sensitivity of the PII at issue in this case and the harm that unauthorized access can cause for Plaintiffs and Nationwide Class Members.

59.    PowerSchool owed these duties to Plaintiffs and Nationwide Class Members because they are members of a well-defined, foreseeable, and probable class of individuals that PowerSchool knew or should have known would suffer injury-in-fact from PowerSchool's inadequate security practices and systems.

60.    PowerSchool owed Plaintiffs and Nationwide Class Members at least the
following duties:

    a.    to exercise reasonable care in handling and using the PII in its care and custody;

    b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized; and

    c.    notify Plaintiffs and Nationwide Class Members within a reasonable timeframe of any breach to the security of their PII.

61.    Therefore, PowerSchool owed a duty to timely and accurately disclose to Plaintiffs and Nationwide Class Members the scope, nature, and occurrence of the Data Breach. Plaintiffs and Nationwide Class Members needed PowerSchool to take appropriate measures to timely protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

62. PowerSchool also had a duty to exercise appropriate clearinghouse practices to remove PII when it was no longer necessary to retain under applicable regulations.

63. PowerSchool knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiffs and the Nationwide Class involved an unreasonable risk of harm to Plaintiffs and the Nationwide Class, even if the harm occurred through the criminal acts of a third party.

64. PowerSchool's duty to use reasonable security measures arose because of the special relationship that existed between PowerSchool, on the one hand, and Plaintiffs and Nationwide Class Members, on the other hand. That special relationship arose because Plaintiffs and Nationwide Class Members entrusted PowerSchool with their confidential PII, which is a necessary part of Defendant's products and services.

65. Under the FTC Act, 15 U.S.C. § 45, PowerSchool had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs and Nationwide Class Members' PII.

66. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of PowerSchool's duty to protect Plaintiffs and the Nationwide Class Members' sensitive PII.

67. PowerSchool violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. PowerSchool's conduct was particularly unreasonable given the nature and amount of PII

PowerSchool had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

68.    The risk that unauthorized persons would attempt to gain access to the PII at issue here and misuse it was foreseeable. PowerSchool has vast amounts of valuable data for students, parents, and school faculty. Similar education technology providers had been subject to data breaches in previous years. PowerSchool also alerted the FBI that it was the target of a data theft campaign in the period before the Data Breach. Therefore, it was inevitable that unauthorized individuals would attempt to access PowerSchool's databases— whether by malware or otherwise.

69.    The PII at issue is highly valuable, and PowerSchool knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiffs and Nationwide Class Members and the importance of exercising reasonable care in handling it.

70.    PowerSchool improperly and inadequately safeguarded the PII of Plaintiffs and the Nationwide Class in deviating from industry standards, regulations, and practices at the time of the Data Breach.

71.    PowerSchool breached these duties as evidenced by the Data Breach.

72.    PowerSchool acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and Nationwide Class Members' PII by:

   a.    enabling access to this information by third parties through negligent website design; and

   b.    failing to properly supervise the manner in which the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

73.    PowerSchool breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiffs and Nationwide Class Members. This actually and proximately caused the Data Breach and Plaintiffs' and Nationwide Class Members' injury.

74.    PowerSchool further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Nationwide Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach.

75.    PowerSchool has admitted that the PII of Plaintiffs and the Nationwide Class was wrongfully lost, accessed, and/or disclosed to unauthorized third persons because of the Data Breach.

76.    As a direct and proximate result of PowerSchool's negligence and/or negligent supervision, Plaintiffs and Nationwide Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

77.    Also, PowerSchool's negligence and failure to exercise reasonable care directly and proximately caused actual, tangible, injury-in-fact and damages for Plaintiffs and Nationwide Class Members, including the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by PowerSchool's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## COUNT II

### Negligence Per Se
**(On Behalf of Plaintiffs and the Class)**

78.    Plaintiffs incorporate the above paragraphs as if fully set forth

herein.

79.    Under FTC Act, 15 U.S.C. § 45, PowerSchool had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and the Class Members' PII.

80.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, consumers' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs' and the members of the Class's PII.

81.    Defendant breached its duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

82.    Defendant's duty of care to use reasonable security measures arose out of the special relationship between Defendant and its consumers, which is recognized by laws and regulations including but not limited to HIPAA and common law. Defendant was able to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from the Data Breach.

83.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). The healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

84.    Defendant's duty to use reasonable care in protecting confidential

data arose out of both the statutes and regulations described above and industry standards used to protect PII.

85.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiffs' and Class Members' PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant collected and stored and the foreseeable consequences of a data breach.

86.    The harm resulting from the Data Breach is the type of harm the FTC Act is intended to protect against. The FTC has pursued numerous enforcement actions against businesses that caused the same harm as that suffered by Plaintiffs and Class Members due to a business' failure to use reasonable data security measures.

87.    Defendant violated its duty under HIPAA by failing to use reasonable measures to protect the health information disclosed in the Data Breach and by not complying with applicable regulations detailed herein.

88.    Plaintiffs and Class Members would not have suffered the injuries alleged herein but for Defendant's wrongful and negligent breach of the duties owed to Plaintiffs and Class Members.

89.    The injury and harm suffered by Plaintiffs and Class Members were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was breaching its duties and that this breach would cause the injuries suffered by Plaintiffs and Class Members alleged herein.

90.    If Plaintiffs and Class Members knew that Defendant did not adequately protect their PII, then Plaintiffs and Class Members would not have entrusted Defendant with their PII.

91.    Defendant's various violations and its failure to comply with applicable laws and regulations constitute negligence per se.

92.    As a direct and proximate result of Defendant's negligence per se, Plaintiffs and Class Members were injured, including through the loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; loss of control over and devaluation of their PII; harm resulting from lower credit scores; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

93.    Additionally, as a direct and proximate result of Defendant's negligence per se, Plaintiffs and Class Members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their PII in its continued possession.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

A.    Determining that this action is a proper class action under Federal Rule of Civil Procedure 23, appointing Plaintiffs as class representatives, and appointing the undersigned counsel as Class counsel;

B.    An award of compensatory damages, punitive damages, statutory or civil penalties to Plaintiffs and the Class as warranted by applicable law;

C.    Injunctive or other equitable relief that directs Defendant to implement reasonable security procedures and practices to protect users' PII that conform to relevant federal and state guidelines and industry norms;

D.    Awarding Plaintiffs and the Class reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

E.    Such other relief as the Court may deem just and proper.

# VIII.   JURY DEMAND

Plaintiffs demand trial by jury of all issues so triable as of right.

DATED: January 21, 2025                    **SINGLETON SCHREIBER, LLP**

*/s/ Andrew D. Bluth*
Andrew Bluth (SBN 232387)
1414 K St Ste 470
Sacramento, CA 95814-3966
Telephone: 916-775-5894
abluth@singletonschreiber.com

Richard Lombardo (MO SBN 29478)
SHAFFER LOMBARDO SHURIN
2001 Wyandotte
Kansas City, MO 64108
Telephone: 816-931-0500
 rlombardo@sls-law.com
(pro hac vice forthcoming)

*Attorneys for Plaintiffs*

COMPLAINT